## Richmond

NANCY H. SCOTT

V.

ANTHONY I. SYLVESTER

August 30, 1979.

Record No. 780176.

Present: All the Justices.

*Robert G. Jones* (*Clements, Bowerman & Jones,* on briefs), for appellant.

(*Edward T. Caton,* on brief), for appellee.

Case submitted on brief for appellee.

I'ANSON, C. J., delivered the opinion of the Court.

This action was instituted by the plaintiff, Nancy H. Scott, against the defendant, Anthony I. Sylvester, under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, Code §§ 20-88.12-.31, specifically Code §§ 20-88.30:1 through 20-88.30:6(a), to recover $9,160.50 allegedly in arrears for child support under a divorce decree entered by the Circuit Court of Montgomery County, Maryland.

The trial judge, in his letter opinion of April 8, 1977, made the

following findings of fact and conclusions of law: (1) that the Maryland decree, modified by the Superior Court of the District of Columbia, had been registered in accordance with Virginia's Revised Uniform Reciprocal Enforcement of Support Act; (2) that notwithstanding the fact that the Maryland decree for child support may be retroactively modified, such decree can be enforced by a court in Virginia; but (3) that Code § 20-88.18 prohibits the court from enforcing the Maryland decree except as to the arrears which accrued while the defendant was present in Virginia. Thus, the trial court found that plaintiff was entitled to recover only $655, the amount of the arrearage accruing during the two months defendant was present and residing in Virginia, and judgment was entered accordingly.

The plaintiff contends that the court erroneously interpreted and applied Code § 20-88.18 and consequently failed to enforce payment of the arrearage owed under the Maryland decree as required by Code § 20-88.30:6(a).

The defendant assigns as cross-error the trial court's ruling that the Maryland decree could be enforced in Virginia. Specifically, the defendant argues that the decree was unenforceable because it was retroactively modifiable and thus not "final."

The facts are not in dispute. The parties were divorced by a decree entered in the Circuit Court of Montgomery County, Maryland, on January 4, 1968. The decree awarded plaintiff child support of $200 per month for each of three children of the marriage. In December 1974, the parties' oldest child attained his majority, and defendant's monthly child support obligation was reduced to $400. During August and September 1975, defendant resided in Virginia and he paid $145 toward child support during those months, thereby creating arrears of $655 for that period. On September 29, 1975, the Superior Court of the District of Columbia, acting on a motion filed some months previously, modified defendant's support obligation but did not rule concerning the arrearage which had accrued while defendant lived in Maryland, the District of Columbia, and Virginia. Since that modification, the defendant has remained current with his child support payments.

Our recent decision in *Alig* v. *Alig*, 220 Va. 80, 255 S.E.2d 494 (1979) is dispositive of the issue presented by defendant's cross-error. There we held that a Maryland divorce decree, which does not possess such a degree of finality as to be entitled to full faith and credit under the mandate of the federal Constitution, may be recognized and treated " 'with the same force and effect as if it had been entered in Virginia' " under the doctrine of comity, and that such a

result is mandated by the Revised Uniform Reciprocal Enforcement of Support Act. Code §§ 20-88.13(14) and 20-88.30:6(a).

■ An analysis of the plaintiff's contentions must begin by noting that the Revised Uniform Reciprocal Enforcement of Support Act is remedial in nature and should be liberally construed so that its purpose of providing support for dependent children is achieved. *Yetter v. Commeau,* 84 Wash.2d 155, 524 P.2d 901 (1974) (en banc). *See Richmond v. Metropolitan Authority,* 210 Va. 645, 648, 172 S.E.2d 831, 833 (1970); *Woodson v. Commonwealth Util., Inc.,* 209 Va. 72, 74, 161 S.E.2d 669, 670 (1968).

■ In light of the remedial nature of the Revised Act and the legislative history of Code § 20-88.18, we do not agree with the trial court's holding that under the provisions of Code § 20-88.18, its jurisdiction was limited to ordering payment of support money only for the two months the defendant was present in Virginia and that the arrearage predating the obligor's presence in Virginia must be pursued in Maryland, the "rendering state." The Revised Act was designed to create an economical and expedient means of enforcing support orders for parties located in different states. *Raney v. Raney,* 536 S.W.2d 617, 619 (Tex. Ct. App. 1976). *See also Barrow v. Barrow,* 220 Tenn. 491, 495, 419 S.W.2d 164, 165-66 (1967). The trial judge's interpretation would substantially frustrate this purpose of "improv[ing] and extend[ing] . . . the enforcement of duties of support." Code § 20-88.12.

Virginia adopted the Uniform Reciprocal Enforcement of Support Act by Acts 1952, c. 516 at 812. The Act was designed to provide for the enforcement of support by a father who had abandoned his family and fled across a state line.

In 1968 the National Conference of Commissioners on Uniform State Laws added to the Uniform Support Act a new section providing an additional remedy for the enforcement of support, which the General Assembly adopted by Acts 1970, c. 669 at 1427.[1] Code §§ 20-88.30:1 through 20-88.30:7.[2] These code sections set forth the procedures to be followed where the obligee has obtained in a foreign state a court order creating a support obligation and thereafter seeks to enforce it in a state where the obligor can be found and served with process. Section 20-88.30:5 provides certain requirements an

---

[1] The Act was amended by inserting the word "Revised" before Uniform Reciprocal Enforcement of Support Act. Acts 1974, c. 464 at 872.

[2] Sections 20-88.30:1 through 20-88.30:6, which were codified in the bound volume of Article 3 of the chapter, were later recodified as Article 4, "Registration of Foreign Support Orders." *See* Code § 20-88.30:1, Code Commission note (Cum. Supp. 1979).

obligee must meet when registering a foreign court order in this State, including a verified statement of the address of the obligor and "the amount of support remaining unpaid." When those statutory requirements have been met, § 20-88.30:6(a) provides that:

> "[T]he registered foreign support order shall be treated in the same manner as a support order issued by a court of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner."

Virginia initially enacted Code § 20-88.18 as a part of the Uniform Reciprocal Enforcement of Support Act, designed to provide support for dependents. This section reads as follows:

> *"What duties are enforceable.*[3]—Duties of support enforceable under this law are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." [4]

This section was designed as a conflict of laws rule which specifies the law governing the duty of support. *Engelson* v. *Mallea,* 180 N.W.2d 127, 131 (Iowa 1970). Under this section the duty of support is that imposed by the law of the state where the obligor was present during the period for which support is sought. *Id.* at 131; *Childers* v. *Childers,* 9 N.C. App. 220, 224-25, 198 S.E.2d 485, 488 (1973). This conflict of laws rule becomes necessary only when the request for support is not based upon a foreign state court order. When the request for support is based upon another state's support order, Code § 20-88.30:6(a) applies, and no conflict results because the language of this section declares that the registered support order shall be treated in the same manner as a support order issued by a Virginia court. Consequently, Code § 20-88.18 is inapplicable when the support request is based upon Code §§ 20-88.30:1 - .30:6.

One of the requirements for registering a foreign court order is

---

[3] The title of the section under the Uniform Act is "Choice of Law." The title of the section now appears as "Choice of Law" in our statute. *See* Code § 20-88.18 (Cum. Supp. 1979).

[4] The statute was amended by Acts 1978, Vol. 1, c. 566 at 872 by inserting "or any part of the period" after the word "period" in the first sentence.

specification of the amount of support remaining unpaid under the order. Code § 20-88.30:5. Such a requirement would indicate that the trial court had jurisdiction to order payment of the full amount of arrears accruing under the Maryland order, rather than only the arrears which accrued while the defendant was in Virginia. Our holding is also consistent with the legislature's intent in amending Code § 20-88.18 by adding the language "or any part of the period" in the first sentence.

The trial court's holding defeats the intent and purpose of Code §§ 20-88.30:1 through 20-88.30:7. Hence, we hold that the trial court erred in holding that it had no jurisdiction to enter judgment for the amount of support unpaid except during the time defendant was in Virginia.

The judgment of the court below will be reversed, and the case remanded for further proceedings.

*Reversed and remanded.*