**Richmond**

Nancy H. Scott

v.

Anthony I. Sylvester

April 29, 1983.

Record No. 801871.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*(Robert G. Jones,* on briefs), for appellant.
*Barry Randolph Koch (Edward T. Caton,* on brief), for appellee. Case submitted on briefs for appellant.

POFF, J., delivered the opinion of the Court.

Appellant Nancy H. Scott questions the power of a Virginia court to make retroactive modifications in arrearages in child support payments accrued under a foreign decree.

This appeal is a sequel to one we decided in 1979. In that case, Scott invoked the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), Code §§ 20-88.12, *et seq.,* by registering a divorce decree entered by a Maryland court requiring her former husband, Anthony I. Sylvester, to make child support payments of $200 per month for each minor child. Scott claimed $9,160.50 in arrearages, most of which had accrued before Sylvester moved to Virginia. The trial court construed Code § 20-88.18 as a limitation upon its jurisdiction to enforce payment of arrearages accrued while Sylvester resided out-of-state and disallowed all but $655.00 of her claim. We held that jurisdiction extended to the full amount of arrearages accruing under the Maryland decree, reversed the judgment, and remanded the cause for further proceedings. *Scott* v. *Sylvester,* 220 Va. 182, 257 S.E.2d 774 (1979).

Upon remand, the trial judge conducted two hearings and issued a letter opinion dated June 10, 1980. The judge found that Scott's claim totalled $16,200.00. Against this total, he offset $6,073.50 in payments Scott acknowledged Sylvester had made to her. He also allowed Sylvester $2,086.20 in credits for certain payments he had made directly to the children or to others for their benefit. Other such credits claimed by Sylvester were disallowed on the ground they were gifts. The evidence showed that Sylvester had been unemployed for six months in 1975 and that

the children had spent several months in his custody over the years in question. For these intervals, the court reduced the quantum of the monthly payments decreed by the Maryland court and allowed Sylvester a credit of $2,925.00. Applying these several credits against Scott's claim, the court concluded that Sylvester was delinquent in the sum of $5,115.30.

In a final decree entered August 22, 1980, *nunc pro tunc* June 10, 1980, the trial court held that "the defendant's arrearage should be retroactively modified pursuant to the law of Maryland by the various amounts set forth in the attached letter opinion" and awarded Scott judgment for the net arrearages, interest in the sum of $1,450.50, and an attorney's fee in the sum of $1,131.84.

In ruling on Scott's first appeal, we discussed at length the purposes and legislative history of RURESA. *See* 220 Va. at 185-86, 257 S.E.2d at 775-76. We recognized that a foreign support order registered pursuant to Code § 20-88.30:5 "shall be treated in the same manner as a support order issued by a court of this State." Code § 20-88.30:6(a). But we had no occasion to decide, as we must now, whether this statutory provision mandates the application of Maryland or Virginia law to assess the amount of arrearages actually due Scott under her claim.

The choice of law is crucial. Under Virginia law, a court lacks authority to relieve a delinquent spouse of the obligation to pay accrued installments of child support. The reasoning underlying this rule is that each installment becomes a vested property right the moment it falls due and, as such, is immune from modification. *Cofer* v. *Cofer,* 205 Va. 834, 839, 140 S.E.2d 663, 667 (1965); *accord Fearon* v. *Fearon,* 207 Va. 927, 932, 154 S.E.2d 165, 168 (1967). Under Maryland law, however, "child support payments (like alimony) may be modified with respect to such payments as have accrued as well as those not yet due." *Johnson* v. *Johnson,* 241 Md. 416, 420, 216 A.2d 914, 917 (1966).

Scott asserts that "the plain, unqualified language and intent of § 20-88.30:6(a)" subject the registered Maryland decree to Virginia law for all purposes. She urges that "the ruling of the lower court retroactively modifying the arrearages . . . must be reversed" because a support order entered by a Virginia court cannot be so modified. Sylvester counters that the statute should be construed "to give a foreign support order equal dignity in procedural enforcement, not in substantive application." He reasons that, in taking evidence during the Virginia enforcement proceed-

ing of the need for retroactive modification, the judge properly afforded him the same opportunity he would have had in a Maryland court to challenge his obligation under the decree.

■ This Court has enunciated the guiding principles in *Alig* v. *Alig,* 220 Va. 80, 255 S.E.2d 494 (1979). That case involved a suit in Virginia for enforcement of the alimony provisions of a Maryland divorce decree and for payment of arrearages. Acknowledging that the modifiable Maryland decree lacked the quality of finality contemplated by the full faith and credit clause, U.S. Const. art. IV, § 1, we reaffirmed our approval of the comity doctrine, which allows our courts to give such a decree "the same force and effect as if it had been entered in Virginia". 220 Va. at 84, 255 S.E.2d at 497 (quoting *McKeel* v. *McKeel,* 185 Va. 108, 113, 37 S.E.2d 746, 749 (1946)). We admonished, however, that

[i]n enforcing a foreign decree for alimony arrearages under the comity doctrine, due process requires that a court consider any questions of modification raised by either party which could have been presented to the courts of the state where the decree was originally entered. *Griffin* v. *Griffin,* 327 U.S. 220, 233-34 (1946); *Worthley* v. *Worthley,* [44 Cal.2d 465,] 468-74, 283 P.2d [19,] 22-25 [(1955)].

220 Va. at 84-85, 255 S.E.2d at 497.

■ The registration privilege of RURESA extends to "any judgment, decree, or order of support . . . whether temporary or final, or subject to modification". Code § 20-88.13(14). Once the statutory requirements for registration are met, the foreign support order "shall be treated in the same manner as a support order issued by a [Virginia] court". Code § 20-88.30:6(a). This mandatory provision substantially parallels our language in *McKeel* and *Alig* where we applied the *discretionary* principle of comity. Since RURESA *compels* the enforcement in Virginia of a registered, though modifiable, foreign decree, it is all the more essential that the parties subject to its terms be accorded all the substantive rights regarding modification granted them in the issuing state.

We hold that due process requires no less. Accordingly, we conclude that the trial judge was correct in applying Maryland law to the retroactive modification issue raised in the proceedings below.

■ Scott challenges not only the retroactive reductions in the installments due for certain time periods, but also the credits allowed for certain payments Sylvester made for the benefit of the children but not directly to Scott. The registered Maryland decree ordered Sylvester to "pay to [Scott] for the maintenance and support of [the] minor children the sum of Two Hundred Dollars ($200.00) per month, per child". Scott contends that under *Newton v. Newton,* 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961), Sylvester was obligated "to pay the specified amounts according to the terms of the decree", and that the trial judge erred in allowing him credit for payments made in any other manner. Citing Virginia authority distinguishing *Newton,* Sylvester says the credits were appropriate because they represented payments "for the benefit of the children, disbursed at [Scott's] direction and in some cases requested directly by the sending of bills".

The parties' reliance on Virginia authority is misplaced. Like the question of retroactive modification, the question whether Sylvester was strictly bound to the payment terms of the Maryland decree must be resolved under Maryland law. In *Bradford v. Futrell,* 225 Md. 512, 519, 171 A.2d 493, 497 (1961), the Court of Appeals of Maryland, considering the same arguments the parties raise here, upheld a chancellor's allowance of credits for "payments made [by the father] to the children but received by [the mother] and applied to the maintenance of the children".

The findings of the trial judge here are set out in painstaking detail in his letter opinion. It is evident he took meticulous care in examining the financial records submitted by the parties to determine not only the accuracy of the figures but also the purpose underlying the various disbursements. *Bradford* provides ample authority for his allowance of credits to Sylvester, and we will not disturb his findings.

We find no error in the court below, and we will affirm the decree.

*Affirmed.*