## MARK TARAVELLA *v.* DEBRA STANLEY
### (AC 17077)

Foti, Schaller and Healey, Js.

Argued November 4, 1998—officially released March 30, 1999

*George R. Temple*, for the appellant (plaintiff).

*J. Bernard Davis*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Donald M. Longley*, assistant attorney general, for the appellee (state).

*Robert W. Shaver II*, for the minor child.

*Opinion*

HEALEY, J. This appeal involves the Uniform Reciprocal Enforcement of Support Act (URESA), General Statutes (Rev. to 1995) § 46b-180 et seq.[1] The issue to be decided is whether under our URESA statute a respondent[2] in an action on the issue of paternity is entitled to a jury trial under General Statutes (Rev. to 1995) § 46b-164.[3] In oral argument before this court, the respondent's counsel abandoned any constitutional claim, state or federal, that he had made,[4] and thus, we are presented solely with the statutory issue of whether the respondent is entitled to a jury trial on the issue of paternity under § 46b-164.

The following facts are relevant to this appeal. The petitioner, Debra Stanley, initiated a petition in Michigan to establish the paternity of a child, born to her on

---

[1] Our URESA statute became effective on June 18, 1953. See Public Acts 1953, No. 353.

[2] Adopting the terminology employed in our URESA statute, we will refer to the plaintiff, Mark Taravella, (a Connecticut resident) as the respondent and the defendant, Debra Stanley, (a Michigan resident) as the petitioner.

[3] General Statutes (Rev. to 1995) § 46b-164 at all times relevant to this case provided: "In any prosecution under the provisions of this chapter, the trial of the question of fact as to the guilt or innocence of the defendant shall, at the desire of either party, be by a jury of six." See footnote 13.

[4] Respondent's counsel also conceded at oral argument before us that his brief was not adequate for a constitutional analysis.

December 10, 1994. This petition was initiated under Michigan's Uniform Reciprocal Enforcement of Support Act and then forwarded to Connecticut. On October 16, 1995, the respondent, Mark Taravella, appeared[5] through counsel in Connecticut and filed a denial of paternity. He also requested that the court order genetic testing of the petitioner, the minor child and himself to assist in the resolution of the issue of paternity. The results of the genetic testing indicated that the probability of paternity was 99.75 percent that the respondent was the child's biological father.

After reviewing the genetic test results, the respondent filed a motion for disclosure of facts, production of records and interrogatories on February 26, 1996. The petitioner complied with this requested discovery on March 1, 1996. On April 16, 1996, the respondent's counsel went to Michigan to take the petitioner's deposition. The petitioner appeared for the deposition and has consistently complied with every request for discovery that the respondent has made.

Thereafter, on August 1, 1996, the respondent moved for trial by jury. That motion was denied by a family support magistrate. On October 28, 1994, after a trial of the issues to the magistrate, a determination of paternity was entered against the respondent. The respondent then appealed to the Superior Court. See General Statutes (Rev. to 1995) § 46b-231 (n). The Superior Court, *Shortall, J.*, affirmed the decision of the magistrate.[6] This appeal followed.

---

[5] The attorney general of Connecticut represents the petitioner in URESA proceedings in accordance with General Statutes (Rev. to 1995) § 46b-186, which provides in relevant part: "It shall be the duty of the attorney general to appear on behalf of and represent the petitioner in every proceeding pursuant to this part at the time the petition is filed and at all stages of the proceeding thereafter in this state and to obtain and present such evidence or proof as may be required by the court in the initiating state or the responding state . . . ."

[6] On his appeal to the Superior Court, the respondent's claim for a jury trial was based on two grounds. First, URESA matters are really "IV-D

On appeal to this court, the respondent claims that the fact that an action is brought under the URESA statute does not preclude a respondent from his right to a jury trial under § 46b-164. The respondent's claim involves a number of subissues, which we discuss in turn.

Initially, we note certain relevant principles that we will supplement during our discussion. "In 1950, the Commissioners of Uniform State Law enacted the Uniform Reciprocal Enforcement of Support Act . . . in an attempt to aid the enforcement of support obligations between persons residing in separate states. This act, currently law in every state of the United States, provides an inexpensive and efficient enforcement mechanism for the 'interstate' collection of child support." 2 N. Vitek, Disputed Paternity Proceedings (5th Ed. 1998) § 31.01. The primary purpose of URESA is to provide a simple two state procedure by which the obligor's (respondent's) duty to support an obligee (petitioner) may be enforced expeditiously and with a minimum of expense to the obligee. See *Proctor* v. *Sachner*, 143 Conn. 9, 12, 118 A.2d 621 (1955); *Koon* v. *Boulder County Dept. of Social Services*, 494 So. 2d

support cases" by operation of General Statutes (Rev. to 1995) § 46b-231 (m) (2) and that respondents in such cases are entitled to a jury trial on the issue of paternity, pursuant to General Statutes § 46b-231 (m) (5). Second, if the respondent is not entitled to a jury trial by operation of these statutes, he is denied his constitutional rights under the federal and state constitutions to due process of law and equal protection of the laws. As noted, the respondent has abandoned his constitutional claims.

Parenthetically, we note that "IV-D support cases," as defined in General Statutes (Rev. to 1995) § 46b-231 (b) (14), "are actions for child and spousal support under Title IV-D of the Social Security Act and include cases in which support rights have been assigned to the state in AFDC cases [AFDC cases are cases in which an individual is receiving benefits under Title IV-A of the Social Security Act. See General Statutes § 46b-231 (b) (1).] and in foster care cases or cases in which a person has applied, prior to October 1, 1993, to the support enforcement division of the superior court, or applied, on or after October 1, 1993, to the department of social services, for child-support enforcement services."

1126, 1129 (Fla. 1986); *Dept. of Human Resources* v. *Westmoreland,* 210 Ga. App. 603, 436 S.E.2d 706, cert. denied, 210 Ga. App. 901 (1993); *Paton* v. *Brill,* 104 Ohio App. 3d 826, 829, 663 N.E.2d 421 (1995); *Clarkston* v. *Bridge,* 273 Or. 68, 71, 539 P.2d 1094 (1975); *Bushway* v. *Riendeau,* 137 Vt. 455, 459, 407 A.2d 178 (1979); *State* v. *Grenley,* 78 Wash. App. 864, 867, 899 P.2d 830 (1995). "URESA creates no duty of support itself, but instead simply provides a means to enforce a duty of support as it may exist under the law of the responding state." *Johnson* v. *Johnson,* 264 Ill. App. 3d 662, 664, 636 N.E.2d 1013 (1994); see *Esteb* v. *Enright,* 563 N.E.2d 139, 141 (Ind. App. 1990); *Horch* v. *Ponik,* 132 Wis. 2d 373, 378, 392 N.W.2d 123, rev. denied, 132 Wis. 2d 484, 393 N.W.2d 544 (1986). The remedies provided under URESA are "in addition to and not in substitution for any other remedies." General Statutes (Rev. to 1995) § 46b-181; see, e.g., *Dept. of Human Resources* v. *Westmoreland,* supra, 603; *Daniel-Nordin* v. *Nordin,* 173 Wis. 2d 635, 648, 495 N.W.2d 318 (1993). This court has said that "[i]n URESA cases, this court gives great weight to decisions from other jurisdictions in compliance with the mandate of General Statutes § 46b-209, which provides that '[t]his part shall be [so interpreted and] construed as to [effectuate] its general purpose to make uniform the laws of the states which enact it.' " *Fischer* v. *Goldstein,* 14 Conn. App. 487, 492 n.6, 542 A.2d 731, cert. denied, 208 Conn. 814, 546 A.2d 280 (1988). URESA is a remedial statute and is to be liberally construed. See, e.g., *In re Marriage of Ryall,* 154 Cal. App. 3d 743, 751, 201 Cal. Rptr. 504 (1984); *Illinois* v. *Sterling,* 248 Minn. 266, 274, 80 N.W.2d 13 (1956); *Scott* v. *Sylvester,* 220 Va. 182, 185, 257 S.E.2d 774 (1979), on appeal after remand, 225 Va. 304, 302 S.E.2d 30, cert. denied, 464 U.S. 961, 104 S. Ct. 395, 78 L. Ed. 2d 338 (1983); *Yetter* v. *Commeau,* 84 Wash. 2d 155, 159, 524 P.2d 901 (1974); 73 Am. Jur. 2d, Statutes § 338 (1974).

Although the 1958 revision of URESA is silent concerning a court's authority to adjudicate paternity in an

interstate proceeding, neither party to this case claims that the court here lacked such authority and the majority of courts[7] addressing this question appear to have taken "a more desirable approach" and "[t]hese better reasoned decisions take a broader, less restrictive view of section 7[8] [URESA] and conclude that adjudication of paternity is well within the scope of the URESA support proceeding." 2 N. Vitek, supra, § 31.06. The Oregon Supreme Court's decision in *Clarkston* v. *Bridge*, supra, 273 Or. 68, exemplifies that view. In *Clarkston*, the court said, "URESA authorizes both the finding and the enforcement of duties of support which have not been previously established in another proceeding." Id., 72. The *Clarkston* court reasoned that, in determining whether the respondent owed a duty of support to the child involved, the court first had to decide whether the respondent was the father of the child. Therefore, it observed that since the order of support portion of its URESA statute authorized its circuit court to find and enforce a duty of support in a URESA proceeding, "the statutory authority to establish paternity . . . seems clearly implied." Id., 73. In *Fisher* v. *Goldstein*, supra, 14 Conn. App. 490, this court said: "The fact that this is a URESA action and not a traditional paternity proceeding is no impediment to the trial court's finding of paternity. It is well established that a court sitting in a URESA proceeding has jurisdiction to determine paternity. See annot., 81 A.L.R.3d 1175 [1977], Determination of Paternity of Child as Within Scope of Proceeding Under [URESA]."

The respondent raises a number of issues in support of his basic claim that he is not precluded in this URESA proceeding from electing a trial by jury under § 46b-164. He claims that there is nothing in URESA that takes

[7] Courts in some twenty jurisdictions have taken this position. See 2 N. Vitek, supra, § 31.06 n.8.

[8] Section 7 of URESA is similar to General Statutes (Rev. to 1995) § 46b-184.

away his right to a jury trial set out in § 46b-164 even though § 46b-164 is set out in another chapter of our statutes, i.e., chapter 815y. In doing so, he points to § 46b-181 in URESA, which is entitled "Remedies additional to existing remedies" and which states that "[t]he remedies herein provided are in addition to and not in substitution for any other remedies." Going on, the respondent claims that under § 46b-197,[9] which provides that the proceedings are to be conducted "in the manner prescribed by law for an action for the enforcement of the type of duty of support claimed . . . ."

According to the respondent, because URESA is silent as to a jury trial, § 46b-181 entitles him to elect a jury trial under § 46b-164, even though this latter stat-

---

[9] General Statutes (Rev. to 1995) § 46b-197 provides: "The court or other agency empowered by law to establish or enforce support shall conduct proceedings under this part in the manner prescribed by law for an action for the enforcement of the type of duty of support claimed, and if the respondent enters a verified denial of any of the material allegations thereof, the court or other agency empowered by law to establish or enforce support shall stay the proceedings and transmit to the court or other agency empowered by law to establish or enforce support in the initiating state a transcript of the official proceedings, showing the denials entered by the respondent. Upon receipt by the court or other agency empowered by law to establish or enforce support in the initiating state of such transcript, such court or other agency empowered by law to establish or enforce support shall take such proof, including the testimony of the petitioner and the petitioner's witnesses and such other evidence as the court or other agency empowered by law to establish or enforce support deems proper, and the bureau shall make its recommendation, based on all of such proof and evidence, and shall transmit to the court or other agency empowered by law to establish or enforce support in the responding state an exemplified transcript of such proof and evidence and of its proceedings and recommendation in connection therewith. Upon the receipt of such transcript, the court or other agency empowered by law to establish or enforce support in the responding state shall resume its hearing in the proceeding and shall give the respondent a reasonable opportunity to appear and reply. Upon the resumption of such hearing, the respondent shall have the right to examine or cross-examine the petitioner and the petitioner's witnesses by means of depositions or written interrogatories, and the petitioner shall have the right to examine or cross-examine the respondent and the respondent's witnesses by means of depositions or written interrogatories."

ute is found in a different chapter of our General Statutes than the URESA statute. Furthermore, in oral argument before us, the respondent specifically claimed that the "in addition to and not in substitution for any other remedies for" language of § 46b-181 overrides the language of § 46b-164 confining it to chapter 815y, despite the fact that the legislature, in enacting our URESA statute, left the language of § 46b-164 totally untouched. The respondent also maintains that the legislature's failure expressly to override § 46b-164 does not preclude this entitlement to a jury trial under § 46b-164 because § 46b-231 (m) (5)[10] makes the jury trial option available to him.

In countering the respondent's claims, the petitioner argues that § 46b-164 is contained in chapter 815y of the General Statutes, whereas the URESA court's ability to determine the support obligation is authorized by General Statutes (Rev. to 1995) §§ 46b-198[11] and 46b-180 (4),[12] which are contained in chapter 816. The petitioner

---

[10] General Statutes (Rev. to 1995) § 46b-231 (m) (5) of the Family Support Magistrate's Act provides: "Proceedings to establish paternity in IV-D support cases shall be filed in the family support magistrate division for the judicial district where the mother or putative father resides. The matter shall be heard and determined by the family support magistrate in accordance with the provisions of chapter 815y, except that if a party to the action demands trial by jury, pursuant to section 46b-164, the matter shall be referred for trial to the superior court for the judicial district where the case was filed."

[11] General Statutes (Rev. to 1995) § 46b-198 entitled "Order of Support" provides: "If the court or other agency empowered by law to establish or enforce support of the responding state finds a duty of support, it may order the respondent to furnish support or reimbursement therefor and subject the property of the respondent to such order. Support orders shall require that payments be made to the appropriate state agency of the court of the responding state."

[12] General Statutes (Rev. to 1995) § 46b-180 (4) provides: " 'Duty of support' includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, dissolution of marriage, judicial separation, separate maintenance or otherwise. Where any order for the payment of alimony or support to or on behalf of any obligee has been made by the superior court or a family support magistrate of this state, the amount of

also argues that the legislature intended to exclude URESA fathers from the scope of § 46b-164 because the clear language of § 46b-164 limits that statute to "prosecutions" encompassed by chapter 815y and, accordingly, absent legislation to the contrary, this court "must" not apply § 46b-164 to this URESA proceeding. The petitioner, therefore, argues that because the URESA court's ability to determine paternity under URESA is not a "prosecution" under the provisions of chapter 815y, the respondent does not have a statutory right to a jury trial. We agree with the petitioner.

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996); see *Commission on Human Rights & Opportunities* v. *Truelove & MacLean, Inc.*, 238 Conn. 337, 349, 680 A.2d 1261 (1996). "If the words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive since where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended, but what intention it expressed by the words that it used." *Duguay* v. *Hopkins*, 191 Conn. 222, 228, 464 A.2d 45 (1983); see also *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 571, 512 A.2d 893 (1986); 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 46.01. "Courts may not read into clearly expressed legislation provisions which do not find expression in its words. *Brunswick Corporation* v. *Liquor Control Commission*, 184 Conn. 75, 81, 440 A.2d 792 (1981), quoting *International Business Machines Corporation* v. *Brown*, 167 Conn. 123, 134, 355 A.2d

such order shall be accepted as determinative of the measure of such obligation, and such order may be enforced by the family support magistrate division through proceedings under this part."

236 (1974)." (Internal quotation marks omitted.) *Struckman* v. *Burns*, 205 Conn. 542, 546, 534 A.2d 888 (1987).

We turn first to the respondent's claim that he is entitled to a jury trial because there is nothing in URESA that takes away his "right" to a jury trial under § 46b-164. In advancing this position, he does not, however, appropriately confront the plain language of § 46b-164. That section starts with the following words of limitation: "In any prosecution under the provisions of this chapter . . . ." This statute is found in chapter 815y of the General Statutes captioned "Paternity Matters," whereas the URESA statute is found in chapter 816, where it is set out as the "Uniform Reciprocal Enforcement of Support Act." The plain language of § 46b-164 embodies the legislative intent that, inter alia, "the trial of the question of fact as to the guilt or innocence of the defendant" in a paternity action under chapter 815y is a "prosecution under the provisions of chapter 815y." The unambiguous language of this statute demonstrates the legislative intent to confine the entitlement to a jury trial to "any prosecution under the provisions of [chapter 815y]."

There is no question that the legislature may, by the language it uses in a statute or a section of a statute, demonstrate its intent that it be limited or restricted. See *Stuart* v. *Dept. of Correction*, 221 Conn. 41, 45, 601 A.2d 539 (1992); *Public Service Commission* v. *Diamond State Telephone Co.*, 468 A.2d 1285, 1300 (Del. 1983); see 73 Am. Jur. 2d, Statutes § 199 (1974). The legislature's use of words, such as those used in § 46b-164, limiting that section to chapter 815y, can and does set out the intended situations that bring that statute into play and "connotes the legislative intent to exclude that which is not included." *McNulty* v. *Stamford*, 37 Conn. App. 835, 840, 657 A.2d 1126 (1995). The authority of a court in a URESA proceeding to determine a "duty

of support" is authorized by statute set out in a different chapter of the General Statutes than that containing § 46b-164. Had the legislature intended to afford URESA respondents a jury trial, it could have so stated in the URESA statute, just as it did in § 46b-164. We simply cannot import into chapter 816 that which the legislature clearly confined to chapter 815y.

Moreover, the respondent's claim is not supported by his invocation of the "in addition to and not in substitution for any other remedies" language of § 46b-181. He claims that this language, given the silence of URESA on the availability of a jury trial, entitles him to the benefit of the jury trial election in § 46b-164. This claim fails for two reasons. First, the plain language of § 46b-164, confining that statute to chapter 815y, bars drawing on the language of § 46b-181 in chapter 816 to support this argument. Second, the option of a defendant in a "prosecution" under § 46b-164 does not constitute a "remedy," in and of itself, within the purview of § 46b-181. Rather, § 46b-164[13] was a portion of the statutory scheme in chapter 815y that afforded a "remedy" for the rights created by and to be enforced by chapter 815y. It has been stated that "[e]very action is brought in order to obtain some particular result which is termed the remedy. This final result is not the 'cause of action;' it is rather the 'object of the action.' " *Wildman* v. *Wildman*, 70 Conn. 700, 707, 41 A. 1 (1898). The United States Supreme Court quoted with approval Bouvier's[14] definition of "remedy" as "the means employed to enforce a right, or redress an injury." (Internal quotation marks omitted.) *The Knapp, Stout & Co.* v. *McCaffrey*, 177 U.S. 638, 644, 20 S. Ct. 824, 44 L. Ed. 921 (1900). Courts speak of a "cause of action" as a set of facts on

---

[13] We note that § 46b-164 was repealed by Public Acts, Spec. Sess., June, 1997, No. 97-7, § 37, effective July 1, 1997, after the Superior Court decision in this case was appealed to this court.

[14] Bouvier's Law Dictionary (1897).

which a recovery (or a specific result) may be had and the cause of action is distinct from the remedy in that the remedy is the means by which that cause may be satisfied or its results effectuated. *Ex Parte Southern Building Code Congress*, 282 Ala. 523, 528, 213 So. 2d 365 (1968); *Venuto* v. *Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 122, 99 Cal. Rptr. 350 (1971); *World Radio Laboratories, Inc.* v. *Coopers & Lybrand*, 2 Neb. App. 747, 753, 514 N.W.2d 351 (1994); 1 Am. Jur. 2d, Actions § 2 (1994). The provision in § 46b-164 for a trial by court or by jury is simply a description of the mode of the trial that a defendant may elect in a chapter 815y proceeding. See *State* v. *Barnett*, 700 So. 2d 1005, 1015 (La. App. 1997). It is not per se a "remedy"; the entire statutory scheme of chapter 815y prescribes the steps required to be undertaken to obtain the remedy provided by the provisions of that chapter. In enacting legislation, lawmakers are deemed to have had a definite purpose in mind, and to have included the component parts, which were intended to accomplish the legislative purpose of that statutory scheme. See *Denbo* v. *Moorestown Township*, 23 N.J. 476, 481, 129 A.2d 710 (1957). Section 46b-164 is but one of these component parts within the statutory scheme of chapter 815y that, in combination with other components, affords the remedy. Section 46b-164, therefore, does not fall within the scope of § 46b-181. The "in addition to and not in substitution for any other remedies" language in § 46b-181 means that our URESA provision, which comes from the uniform act, is separate and apart and additional to other remedies for the enforcement of child support obligations that exist under our law. See, e.g., *People ex rel. Oetjen* v. *Oetjen*, 92 Ill. App. 3d 699, 703, 416 N.E.2d 278 (1980); *Gray* v. *Messier*, 602 A.2d 1155, 1156 (Me. 1992); *Rood* v. *Rood*, 4 Neb. App. 455, 461, 545 N.W.2d 138 (1996); *San Diego* v. *Elavsky*, 58 Ohio St. 2d 81, 84, 388 N.E.2d 1229 (1979); *Horch* v.

*Ponik,* supra, 132 Wis. 2d 379. For example, it is "in addition to and not in substitution for" such child support obligations as may be created by a paternity proceeding under chapter 815y[15] or such an order created by a dissolution of marriage decree. See General Statutes (Rev. to 1995) § 46b-204. We reject the respondent's claim as to § 46b-164 because, as we have shown, § 46b-164 specifically and URESA as a whole provide a petitioner with an additional or alternative civil *remedy* that does not in any way impair or affect any other *remedy* available to a petitioner with reference to the enforcement of child support orders.

Finally, in arguing his entitlement to a jury trial under § 46b-181, the respondent, while conceding that URESA itself is silent on that issue and has never been amended to include a jury trial option, claims that he is entitled to one under the provisions of General Statutes (Rev. to 1995) § 46b-231 (m) (5).[16] We are not persuaded.

Section 46b-231 (m) enumerates the "powers and duties" of family support magistrates. Subdivision (5) of § 46b-231 (m), by its clear language, is confined to "[p]roceedings to establish paternity in IV-D support cases . . . ." Section 46b-231 (b) (14), as we have noted,[17] defines "IV-D support cases." The respondent

---

[15] We note that § 46b-171 (a) of chapter 815y provides in relevant part: "If the defendant is found to be the father of the child, the court or family support magistrate shall order him to stand charged with the support and maintenance of such child . . . ." Thus, this statute, in a "prosecution" under its provisions, operates to *create* a duty of support upon the father.

[16] We note that § 46b-231 (m) (5) is a portion of part III of chapter 816 of the General Statutes, which contains three parts. Part I sets out the "Uniform Reciprocal Enforcement of Support Act," §§ 46b-180 through 46b-214. Part II sets out the "Obligation of Relatives" provisions in §§ 46b-215 through 46b-230. Part III sets out the "Family Support Magistrate's Act," §§ 46b-231 through 46b-236.

General Statutes (Rev. to 1995) § 46b-231 is entitled "Definitions. Family Support Advisory Committee. Family support magistrate division. Family support magistrates; appointment, salaries, powers and duties. Orders. Appeal. Attorney general; duties re actions for support."

[17] See footnote 6.

apparently claims that his jury trial claim is supported by the language of § 46b-231 (m) (5), which provides in relevant part: "The matter shall be heard and determined by the family support magistrate in accordance with the provisions of chapter 815y, except that if a party to the action demands trial by jury pursuant to section 46b-164, the matter shall be referred for trial to the superior court for the judicial district where the case was filed." The record does not contain anything that would support his claim that the proceeding below was a "IV-D support proceeding" within the ambit of § 46b-231 (m) (5). On this aspect of the matter, he is therefore left outside the reach of that definition and is given no support by the last sentence of subdivision (5) of subsection (m) containing the reference to chapter 815y[18] of the General Statutes.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[18] The reference to chapter 815y in § 46b-231 (m) (5) lends further support to our earlier determination above that the jury trial provided for in § 46b-164 cannot be extrapolated into URESA as that latter enactment is set out in part I of chapter 816. In enacting, in 1986, part III of chapter 816, which is the Family Support Magistrate's Act, the legislature obviously revisited and considered § 46b-164, which was enacted years before both our Family Support Magistrate's Act, § 46b-231 et seq. and our URESA statute. Yet it did nothing about enacting any jury trial entitlement, as set out in § 46b-164 into the URESA statute, also a part of chapter 816. Courts presume that laws are enacted in view of existing relevant statutes and "[s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 715, 674 A.2d 845 (1996); *State* v. *Domian*, 35 Conn. App. 714, 725, 646 A.2d 940 (1994), aff'd, 235 Conn. 679, 668 A.2d 1333 (1996). Stated another way: "[W]e construe statutes with the assumption that the legislature is presumed to be cognizant of existing statutes, and to enact new statutes in an attempt to create a consistent body of law." *State* v. *Domian*, supra, 725.