COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and
     Bumgardner
Argued at Alexandria, Virginia


CLIFTON A. FRANKLIN
                                    OPINION BY
v.    Record No. 1045-97-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                    APRIL 14, 1998
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT
 ex rel. MARIE CATHERINE FRANKLIN


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Paul F. Sheridan, Judge

          Ted Kavrukov (Kavrukov, Mehrotra & DiJoseph,
          on briefs), for appellant.

          William K. Wetzonis, Special Counsel
          (Nancy J. Crawford, Regional Special Counsel;
          Keith H. Warren, Special Counsel; Richard
          Cullen, Attorney General; William H. Hurd,
          Deputy Attorney General; Robert J. Cousins,
          Jr., Senior Assistant Attorney General;
          Craig M. Burshem, Regional Special Counsel,
          on brief), for appellee.



     Clifton A. Franklin (husband) appeals the circuit court's

order to pay child and spousal support.  Husband argues the trial

court erred in:  (1) finding that the service of process for the

juvenile and domestic relations district court proceedings was

sufficient; (2) finding that the trial court and the Division of

Child Support Enforcement have jurisdiction over the person of

husband; and (3) reversing the administrative hearing officer's

finding vacating the Administrative Support Order (ASO).  For the

following reasons, we affirm the trial court's order.

## I.  Background

Husband and Marie Catherine Franklin (wife) were married in California in 1981.  They have two children:  Lloyd, born December 14, 1981, and Armelle, born September 15, 1985.  Wife testified the parties moved to Virginia in January 1991 and lived here for three months, their last domicile prior to their move overseas.  Husband denied ever having resided in Virginia.  Husband obtained employment with John Snow, Inc. (JSI), a Boston-based company, and he signed his employment contract at the JSI field office in Arlington, Virginia in the fall of 1990.  Husband's job took the family to Africa, where they lived from March 1991 until January 1994.

While the parties lived in Africa, their relationship deteriorated and resulted in several physical altercations.  Eventually, husband ordered wife and the children to leave their home.  Wife went to the American Embassy for assistance in returning to the United States.  JSI, husband's employer, paid travel expenses for the three family members, and they arrived at Dulles Airport in Virginia in January 1994.  Wife stayed with the children in a Washington, D.C., hotel for a week and then moved to Arlington, Virginia.  They have remained residents of Virginia since that time.  After wife and the children returned to Virginia, the parties orally agreed that husband would pay child support, and he did so.

On April 22, 1994, wife applied for assistance from the

Division of Child Support Enforcement (DCSE) to establish a child support order against husband.  On January 11, 1995, DCSE issued an ASO that required husband to pay $1,111 per month in child support and established a debt of $2,622 owed to the Commonwealth for the public assistance received by wife.  Husband was served with the ASO by certified mail, return receipt, pursuant to Code § 63.1-252.1.[1]

Meanwhile, on October 19, 1994, wife appeared before the juvenile and domestic relations (JDR) district court and obtained an ex parte emergency custody order preventing either parent from removing the children from Virginia.  The JDR court scheduled a hearing for the following day, at which time husband, by counsel, entered a special appearance to contest the jurisdiction of the court to enter any orders.  Pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), Code § 20-126,[2] the JDR court assumed

---

[1]"The Commissioner shall initiate proceedings by issuing notice containing the administrative support order which shall become effective unless timely contested.  The notice shall be served upon the debtor (i) in accordance with the provisions of §§ 8.01-296, 8.01-327 or § 8.01-329 or (ii) by certified mail, return receipt requested, or service may be waived."  Code § 63.1-252.1.

[2]"A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
1.  This Commonwealth (i) is the home state of the child at the time of commencement of the proceeding . . . or
2.  It is in the best interest of the child that a court of this Commonwealth assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth, and (ii) there is available in this Commonwealth substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . ."  Code § 20-126(A).

3

jurisdiction to decide custody and issued an emergency order.

On November 16, 1994, wife filed a notice for an additional hearing in the JDR court to determine temporary custody. In her affidavit, wife stated that copies of the notice had been sent by registered mail to the JSI corporate office in Boston, to JSI field offices in Arlington, Virginia, and Bamako, Mali, to husband's work station in Bamako, Mali, and to husband's counsel in Arlington, Virginia. Neither husband nor his counsel appeared to contest custody, and the JDR court granted temporary custody to wife.

On February 8, 1995, husband's counsel filed a "limited appearance" praecipe in the JDR court. In an order entered February 14, 1995, the court, upon husband's oral motion requesting relief, ordered telephone access to and summer visitation with the children. In addition, upon wife's oral motion to join the issues of child and spousal support, the JDR court ordered the parties to submit points and authorities regarding the court's jurisdiction over husband to hear issues other than custody and visitation. The question of jurisdiction was continued to March 8, 1995.

After the March 8, 1995 hearing, the JDR court entered an order on May 10, 1995, which granted custody to wife, granted visitation to husband, and stated "that the parties recognize that all child support issues are currently being handled by DCSE administratively."

Meanwhile, on February 23, 1995, DCSE ordered JSI to withhold child support from husband's earnings. Husband appealed the withholding-from-earnings order to an administrative hearing officer, contending the underlying ASO was invalid for lack of jurisdiction over husband. The ASO's administrative determination itself was never appealed. On June 13, 1995, the hearing officer reversed the ASO, finding that DCSE had "no jurisdiction administratively."

On July 18, 1995, wife appealed the hearing officer's decision to the JDR court and also filed a motion for spousal support. The JDR court notified husband of the appeal pursuant to Code § 63.1-268.1. On July 25, 1995, husband's counsel again entered a praecipe for a special appearance. The appeal was scheduled for August 1, 1995, but was dismissed without prejudice due to wife's failure to appear.

On August 3, 1995, husband filed a petition for a rule to show cause against wife for violations of the JDR court's visitation order of May 10, 1995. Wife agreed that she would not interfere with husband's telephone contact with the children, and husband withdrew his petition.

On December 20, 1995, after a hearing on wife's petition for pendente lite support, the JDR court awarded temporary child support, finding that: (1) husband's "request for visitation . . . coupled with [his] request for a Show Cause Rule on this issue of visitation, constitutes a waiver of [his] objection to

5

this Court's jurisdiction over his person;" (2) "the issue of child support is now ripe for adjudication, the administrative process of the [DCSE] having been exhausted;" and (3) "over [husband's] objection, this court has personal and subject matter jurisdiction."  On July 1, 1996, the JDR court awarded spousal support of $500 per month for eighteen months and $1,230 per month child support.  Husband appealed this order to the circuit court on the issue of jurisdiction.

The circuit court heard the case de novo on December 17, 1996.  At the hearing, husband testified that he did not demand, suggest, urge, advise, or insist that wife and the children move to Virginia.  Husband claimed his only connection with Virginia was that his former employer, JSI, (he had since been terminated) had a branch office in Arlington which arranged the family's travel to Africa in 1990 and forwarded their mail to Africa while they were there.  Additionally, husband testified that he never resided, owned property, paid taxes, or obtained a driver's license in Virginia and that he has only been physically present in Virginia three times in the last five years.

The circuit court found that husband caused wife and the children to leave their home in Africa, and, although "he did not direct [wife and the children] to go anywhere," wife's decision to reside in Virginia was "completely logical because it provided the nexus to the employer's office . . . .  It provided a conduit for communication, whether or not it was used, between the

6

company, the mother, and the father of these two children."  The circuit court found that wife's decision to leave Africa and reside in Virginia with the children was "the result of the acts of the father" and that exercise of personal jurisdiction was proper under Code § 20-88.35(5).[3]  Additionally, the circuit court reversed the hearing officer's decision, finding that the ASO was valid under Code § 20-88.35(5).  Husband filed a motion for reconsideration which the circuit court denied on May 9, 1997.

## II.  Standard Of Review

"In its deliberation concerning a child's welfare, including its determination of jurisdictional and enforcement issues, the trial court must make the child's best interests its primary concern."  Johnson v. Johnson, 26 Va. App. 135, 144, 493 S.E.2d 668, 672 (1997).  "[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  "'A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion.'"  Commonwealth ex rel. Ewing v. Ewing, 22 Va. App. 466, 473, 470 S.E.2d 608, 612 (1996) (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

---

[3]"In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this Commonwealth may exercise personal jurisdiction over a nonresident individual . . . [if the] child resides in this Commonwealth as a result of the acts or directives of the individual."  Code § 20-88.35(5).

7

"[W]e view the evidence in the light most favorable to the party prevailing below, giving it all reasonable inferences fairly deducible therefrom." Winfield v. Urquhart, 25 Va. App. 688, 690, 492 S.E.2d 464, 465 (1997). "'Where a trial court makes a determination which is adequately supported by the record, the determination must be affirmed.'" Haase v. Haase, 20 Va. App. 671, 684, 460 S.E.2d 585, 591 (1995) (citation omitted).

### III.  Jurisdiction Over Husband

Husband first argues that service upon him under the Uniform Child Custody Jurisdiction Act (UCCJA) did not give the trial court the authority to enter a support award against him.  We agree.  The language of the UCCJA is clear:  "'Custody determination' means a court decision and court orders and decrees providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person." Code § 20-125(2).  "[T]his section limits the application of Code § 20-126 to child custody matters only, not child support." Johns v. Johns, 5 Va. App. 494, 496, 364 S.E.2d 775, 777 (1988).

However, this conclusion does not end our inquiry.  Although personal jurisdiction under the UCCJA was limited to issues of custody and visitation, the trial court found jurisdiction over husband for support issues under the Uniform Interstate Family Support Act (UIFSA).[4]  "In a proceeding to establish . . . a

---

[4]Code § 20-88.32 et seq.

support order . . . a tribunal of this Commonwealth may exercise personal jurisdiction over a nonresident individual . . . [if the] child resides in this Commonwealth as a result of the acts or directives of the individual."  Code § 20-88.35(5).

The scope of Code § 20-88.35(5) is an issue of first impression in Virginia.  Although the UIFSA has been widely adopted, our sister states also have yet to rule specifically on this provision.  Husband contends the plain meaning of this provision confers jurisdiction over an individual who has done an affirmative act, exerted power or influence, or given instructions, orders, or commands to his children and spouse to go and reside in a particular geographical location.  Since husband never specifically directed wife to move to Virginia, he argues that Virginia courts failed to obtain jurisdiction over him under Code § 20-88.35(5).  We disagree.

In support of his position, husband cites several cases decided under a similar provision predating the UIFSA in Texas in which courts declined to exercise jurisdiction over fathers of resident children.  See Miles v. Perroncel, 598 So.2d 662 (La. App. 1992) (interpreting the Texas statute and declining to exercise jurisdiction over father who failed to object when mother moved child out of state); Ford v. Durham, 624 S.W.2d 737 (Tex. Civ. App. 1981) (no jurisdiction over father who acquiesced to mother's move with child); Bergdoll v. Whitley, 598 S.W.2d 932 (Tex. Civ. App. 1980) (father's continued court-ordered support

9

payments after ex-wife moved to Texas with children did not confer personal jurisdiction). However, in each of these cases, the children resided in Texas after their mother chose to move out of state without any urging from their fathers.

In the instant case, wife made no such choice. After several physical altercations, husband ordered wife and the children from their home in Africa. They had to go somewhere. Wife sought emergency assistance from the American embassy and husband's employer. As a result of this assistance, she and the children returned to the United States. Wife established a permanent home for herself and the children in Virginia, the family's home immediately prior to their departure for Africa, the point of entry for her return to this country, and the location of husband's employer's field office in charge of distributing his mail. We hold that husband's children became residents of this Commonwealth as a result of his acts, and Virginia properly exercised jurisdiction over his person.

Husband's contention that unless he directed wife to this Commonwealth, Virginia courts may not exercise personal jurisdiction in support matters, is overly restrictive. If widely adopted, such a construction would leave spouses similarly situated without a forum in which to request child and spousal support. "'It is the legal and moral duty of a [spouse] to support his [or her] . . . family consistent with his [or her] financial ability.'" L.C.S. v. S.A.S., 19 Va. App. 709, 715, 453

10

S.E.2d 580, 583 (1995) (citation omitted).  To allow husband to escape his support obligations merely because he failed to dictate the specific destination when he ordered his family to leave the marital home would frustrate the purpose of the legislature in enacting the Uniform Interstate Family Support Act.  See Johns, 5 Va. App. at 495, 364 S.E.2d at 776 ("The purpose of RURESA [the predecessor statute to UIFSA] is to create an economical and expedient means of enforcing support orders for parties located in different states.  The act is remedial in nature and should be liberally construed so that its purpose is achieved.").

Additionally, the JDR court found personal jurisdiction on alternative grounds.  Code § 20-88.35(2) provides that courts may exercise personal jurisdiction over an individual for support purposes if "[t]he individual submits to the jurisdiction of this Commonwealth . . . by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction."  "An appearance for any other purpose than questioning the jurisdiction of the court . . . is general, although accompanied by the claim that the appearance is only special."  2A Michie's Jurisprudence of Virginia and West Virginia, Appearances, § 4 (1997).  Several states have held that a request for affirmative relief constitutes a general appearance and waives all objections to defects in service, process or personal jurisdiction.  See Weierman v. Wood Landscaping, 630

11

N.E.2d 1298 (Ill. App. 1994) (pleading to vacate default judgments was general appearance which waived objection to process defects and submitted defendant to jurisdiction); <u>In re Marriage of Stafeil</u>, 523 N.E.2d 1003 (Ill. App. 1988) (motion to vacate temporary custody order waived special appearance); <u>Norwood v. Craig</u>, 658 So.2d 212 (La. App. 1995) (motion for continuance in child support action submitted father to jurisdiction of court); <u>Bullard v. Bader</u>, 450 S.E.2d 757 (N.C. App. 1994) (father's submission of visitation and income information waived his special appearance and his defense of lack of personal jurisdiction).

In the instant case, husband filed a petition for a rule to show cause on August 3, 1995, at a time when the issues of custody and support were properly before the JDR court. At the subsequent <u>pendente</u> <u>lite</u> hearing in December 1995, the JDR court found that husband's request for relief waived his special appearance and his jurisdiction defense. We agree and hold that by making a request for affirmative relief, husband entered a general appearance and submitted himself to the authority of the court.[5]

[5]Husband further contends he lacks the minimum contacts with Virginia necessary for the exercise of personal jurisdiction. "'[I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within'" Virginia. <u>Kulko v. Superior Court</u>, 436 U.S. 84, 94 (1978) (citation omitted). We have held that husband's acts resulted in the children's residence in Virginia. These contacts, combined with husband's motion for visitation and petition for a rule to show cause, each a request for affirmative relief from a Virginia court, satisfy this

12

IV.  Administrative Support Order

Husband also contends the circuit court erred in reversing the hearing officer's determination that the ASO was invalid.  He claims DCSE lacked jurisdiction over him and that service under Code § 63.1-252.1 was improper.  We disagree.[6]

> Code § 63.1-252.1 provides:
> In the absence of [a court order for support of a child], the Commissioner may, pursuant to this chapter, proceed against a person whose support debt has accrued or is accruing based upon payment of public assistance or who has a responsibility for the support of any dependent child or children and their caretaker.

In the case of out-of-state obligors and in the absence of a court order, DCSE "may establish an administrative support order . . . if the obligor and the obligee maintained a matrimonial domicile within the Commonwealth."  Code § 63.1-250.1(G).  In these circumstances, notice containing the ASO may be served upon the debtor by certified mail, return receipt requested.  See Code §§ 63.1-250.1(G), -252.1.

Viewing the evidence in the light most favorable to wife,

---

standard.

[6]We note that husband appeals the withholding-from-earnings order on the ground that the underlying ASO is invalid for want of jurisdiction.  The grounds for appeal of a withholding-from-earnings order are limited to a mistake of fact.  See Code § 63.1-250.3(B).  The proper avenue to contest jurisdiction is to appeal the initial ASO pursuant to Code § 63.1-252.1.
Consequently, we reject husband's formulation and instead address the jurisdictional validity of the ASO directly.

13

the party prevailing below, the record establishes that the parties lived in Virginia immediately before they departed for Africa. The record further reveals that DCSE served notice of the ASO on husband in Africa by certified mail, return receipt requested, and that husband signed for the letter, acknowledging receipt. Therefore, we hold that DCSE had jurisdiction to issue the ASO, that husband was properly served, and that he had actual notice of the support order. For the foregoing reasons, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>