COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White
Argued by videoconference


JOHN PAUL NEBLETT, N/K/A
  JOHN DISCO DAVIDSON
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 2096-23-3                JUDGE KIMBERLEY SLAYTON WHITE
                                                          MARCH 25, 2025
NATHAN FRANCIS NEBLETT


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

Philip B. Baker (Sanzone & Baker, L.L.P., on brief), for appellant.

David W. Shreve (Hellen P. Carrington, Guardian ad litem for the
minor child, on brief), for appellee.


This appeal arises from a disputed child support award. Appellant John Paul Neblett,

n/k/a John Disco Davidson (hereinafter referred to as Mr. Davidson), appeals the circuit court's

award of child support, claiming that it was error for the court to set such an amount absent

appellee Nathan Francis Neblett (hereinafter referred to as Mr. Neblett) showing a material

change in circumstances pursuant to the parties' property settlement and separation agreement.

We disagree and affirm the decision of the circuit court.

BACKGROUND

Mr. Davidson and Mr. Neblett were married in 2013 in the District of Columbia.[1] The

couple filed for divorce, which was thereafter granted by a final decree of divorce of the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The parties will be referred to as "the Nebletts" when referenced collectively.

Lynchburg Circuit Court. The decree was entered on June 24, 2021. The couple had one child by adoption—M.N.[2]

The parties submitted to the circuit court a property settlement and separation agreement ("PSA"), which had a custody and parenting agreement attached to it. Both agreements were incorporated into the final decree of divorce by the circuit court.[3] The custody and parenting agreement did not address child support. Instead, the issue of child support was raised in the PSA, which states, "The parties recognize a joint obligation for the support and maintenance of [M.N.]. Neither party shall pay child support to the other party. Such obligation is subject to modification by a Court of competent jurisdiction upon showing a material change of circumstances."

Though entitled by the final decree of divorce, and though it incorporated both of the submitted agreements, the order states that,

> All Future Matters concerning custody, visitation, and support of the minor child . . . are referred to a court of competent jurisdiction.
> This matter shall remain on the Lynchburg Circuit docket until May 15, 2022 unless a party files a Motion to address parenting issues by that date. Thereafter, the matter shall be stricken from the Court's docket and filed among the ended causes.

The circuit court specifically and explicitly left open issues involving child custody and support until May 15, 2022, by delaying final adjudication if a party files a motion to address parenting issues.

---

[2] We are addressing the parties' child by her initials to protect the privacy of the child.

[3] The final decree of divorce states:

> Adjudged, Ordered and Decreed that the Court does hereby ratify, affirm, approve and incorporate, but not merge, into this Decree by reference thereto the Property Settlement and Separation Agreement between the parties May 19, 2021, and the parties are Ordered to comply with the terms thereof.

On May 13, 2022, Mr. Neblett filed a motion to address parenting issues, requesting an amendment to the terms controlling the Nebletts' shared custody of M.N. and an award of child support under Code § 20-108.2.  The parties reached an agreement as to all issues except for child support.  The court accepted the Nebletts' agreements and incorporated them into the June 2021 divorce decree while leaving the issue of child support undetermined.

Following an evidentiary hearing on child support, the circuit court granted Mr. Neblett's motion and awarded child support of $536.30 per month, retroactive to May 13, 2022, based on the guidelines of support.  The court also found Mr. Davidson to be in arrears as of November 6, 2023, for $9,462.88 in child support.  The court stated that "parents cannot contract away child custody [sic].[4]  What I have to consider is what [is] in the best interests of the child pursuant to [Code §] 20[-]124.2 -- 3 [sic]" in making its determination of child support.

The trial court's order stated:

> Upon Consideration Whereof, the Court having considered the Child Support Guidelines tendered by counsel and the Exhibits admitted with respect to income, incremental healthcare costs, daycare costs and the Court having further fully considered all the arguments of counsel and the statutory factors mandated by the Court to consider in setting Child Support and finding it in all other respects proper to do so . . . .

The exhibits considered by the court were Mr. Neblett's pay statement, and his healthcare, dental, and vision costs; Mr. Davidson's earnings letter, and his parenting time calendar; and the child support guidelines worksheet.

ANALYSIS

On appeal, Mr. Davidson contends that the circuit court erred by setting a child support amount without Mr. Neblett showing a material change in circumstance.  Mr. Davidson argues

---

[4] Based on context and the issues before the court, the court clearly meant to state that "parents cannot contract away child *support*."

that the PSA's child support provision, which states that the parties will not pay child support to one another absent a showing of a material change of circumstances, was incorporated into a final and binding final divorce decree. Furthermore, Mr. Davidson asserts that the child support provision of the PSA validly set the initial child support agreement between the parties, and as such, the September 2023 evidentiary hearing concerned a potential modification of the agreed-upon child support that was subject to the change-in-circumstances standard. We disagree.

The circuit court was not bound to the PSA's provision stating that the parties will not pay child support absent a material change of circumstances because that provision was not incorporated, nor was the decree final as to the "parenting" issues when the court awarded child support. Moreover, the evidentiary hearing on the issue of child support on September 28, 2023, was not a modification hearing but an initial child support hearing.

Divorce and its incidents are matters rooted in and reflective of Virginia's public policy. The state is "directly interested in determining the status of its own citizens, and to this end can and does establish and enforce its own policy in relation to marriage and divorce. . . ." *Shoup v. Shoup*, 37 Va. App. 240, 247 (2001) (en banc) (quoting *Heflinger v. Heflinger*, 136 Va. 289, 308 (1923)). Consistent with this interest, the General Assembly enacted a statutory basis for granting divorce in the Commonwealth, which also encompasses the authority to determine child support. Code § 20-79.1; Code § 20-107.2. Granting a divorce petition is purely a judicial function grounded in statute. *Jackson v. Jackson*, 211 Va. 718, 719 (1971). While parties to a divorce cannot, by agreement, effectuate a divorce, they may reach agreement on all other issues—including child support. Indeed, divorcing parents are encouraged under Virginia public policy to reach an agreement about the care and support of their minor children. *See Morris v. Morris*, 216 Va. 457, 459 (1975) ("[P]ublic policy favors the prompt resolution of disputes

- 4 -

concerning the maintenance and care of minor children . . . . Voluntary, court-approved agreements promote that policy and should be encouraged.").

When a court's child support jurisdiction is invoked, either in the absence of an agreement or where the parties seek to have their agreement of child support reviewed and considered by the court during its determination of a proper award, the court has broad discretion to make an award. *Shoup*, 37 Va. App. at 248-49 (citing *Franklin v. Commonwealth, Dep't of Soc. Servs.*, 27 Va. App. 136, 143 (1998)). Though the court's jurisdiction is broad, it is not unfettered. The best interest of the child is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternative sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying, and incorporating, in whole or in part, the child support provisions of a contract. *Id.* (citing *Watkinson v. Henley*, 13 Va. App. 151, 158-59 (1991)).

Divorcing parties' well-established and broad right to reach legally binding and enforceable agreements concerning the support of their children is similarly firmly rooted in Virginia law. Where an agreement has been reached and either party requests incorporation, the agreement may be affirmed and incorporated into the court's final decree and "deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." *Id.* at 250 (quoting Code § 20-109.1); *see also Morris*, 216 Va. at 459 ("The purpose of [Code § 20-109.1] is to facilitate enforcement of the terms of an incorporated agreement by the contempt power of the court." (alteration in original)). Where the court adopts the parties' agreement by incorporating it into its final and binding decree, it is enforceable, to the word, as any other term of the decree. *Fry v. Schwarting*, 4 Va. App. 173, 179 (1987).

Mr. Davidson's first argument is best understood as asserting that the final decree of divorce was a final order at the time of the September 28, 2023 hearing. As a final order,

Mr. Davidson contends that all provisions of the PSA were finally incorporated and binding upon the circuit court and the parties, including the provision mandating that child support may only be awarded upon a showing of a material change of circumstances. But the final decree of divorce was not a final order.

The question of whether a particular order is a final judgment is a question of law that we review de novo. *Carrithers v. Harrah*, 60 Va. App. 69, 73 (2012). As our Supreme Court has long recognized,

> [W]hen a trial court enters an order, or decree, in which a judgment is rendered for a party, *unless that order expressly provides that the court retains jurisdiction* to reconsider the judgment or *to address other matters still pending* in the action before it, the *order renders a final judgment* and the twenty-one day time period prescribed by Rule 1:1 begins to run.

*Johnson v. Woodard*, 281 Va. 403, 409 (2011) (emphases added) (quoting *Super Fresh Food Markets of Va., Inc. v. Ruffin*, 263 Va. 555, 561 (2002)). If a trial court wishes an order rendered to not be a final order, it must "includ[e] specific language stating that the court is retaining jurisdiction to address matters still pending before the court." *Id.* at 409-10. While a "mere indication that the trial court *intends* to rule on pending motions is insufficient to negate the finality of an order rendering a final judgment on the merits of a case," *Carrithers*, 60 Va. App. at 75, a trial court's express indication that a matter shall remain on its docket sufficiently negates the finality of the order.

Here, the circuit court included the following language regarding child custody and support: "This matter shall remain on the Lynchburg Circuit docket until May 15, 2022 unless a party files a Motion to address parenting issues by that date. Thereafter, the matter shall be stricken from the Court's docket and filed among the ended causes." The fact that an order contains the word "final" in its title does not guarantee its finality. Rather, this Court must examine the content of the order to determine whether it is final. The circuit court's explicit

- 6 -

language leaving the issue of child support open to decide until May 15, 2022, is sufficient to negate the alleged finality of the final decree of divorce.

Mr. Davidson continues his argument by stating that the PSA's child support provision set out an initial child support award, thus mandating the court to use the "material change in circumstances" standard set out in the PSA. Mr. Davidson is incorrect. As of the hearing date, September 28, 2023, there was no child support award in place. As discussed above, the PSA's child support provision was not finally binding upon the parties, and the circuit court never exercised jurisdiction to set an award before that hearing. Because the trial court set child support for the first time at the September 28, 2023 hearing, it was an initial child support hearing. The court was correct to use the best interests of the child standard in setting the child support award. *See Scott v. Scott*, 12 Va. App. 1245, 1247 (1991) (holding that the court erred by considering only those factors relevant to a change in circumstances where the court was setting child support for the first time); *Lee v. Lee*, 3 Va. App. 631, 634 (1987).

CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

*Affirmed.*